Affirmed and Opinion filed May 9, 2002









Affirmed
and Opinion filed May 9, 2002.

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00442-CV

____________

 

NIPPER-BERTRAM TRUST AND OSCAR NIPPER,
Appellants

 

V.

 

ALDINE INDEPENDENT SCHOOL DISTRICT, HARRIS COUNTY, ET AL.,
Appellees

 



 

On
Appeal from the 152nd District Court

Harris County, Texas

Trial
Court Cause No. 97-32021

 



 

O
P I N I O N








This is an appeal of an order disbursing alleged excess
proceeds of $5,946.46 resulting from the judicial foreclosure of a tax
lien.  The underlying judgment dealt with
delinquent taxes on two lots C Lots 6 and 7.  Appellants
Oscar Nipper and Nipper-Bertram Trust, two of the three former property-owners,
appeal the district court=s denial of their request for the excess proceeds.  They seek the excess proceeds from the tax
sale of Lot 6, and the taxing authorities seek to apply those proceeds to
monies owing on the judgment.  Because we
find that taxes, penalties, and interest were due on Lot 6 after the date of
the judgment, and unpaid taxes, penalties, interest or other amounts due under
the judgment were not satisfied from the tax sales, we affirm the trial court=s order. 

Factual and Procedural Background

Josephine D. Bertram (now deceased), Oscar Nipper, and
Nipper-Bertram Trust jointly owned two lots in Harris County upon which they
failed to pay ad valorem taxes.  In June 1997, Aldine Independent School
District (AAldine ISD@) filed suit and several other taxing
authorities (collectively, the AIntervenors@)[1]
intervened in the suit to recover delinquent taxes, penalties, interest, costs,
and attorney=s fees, as well as to foreclose tax
liens.  After a bench trial based on
stipulations among the parties, the trial court entered a judgment.  The judgment, signed October 22, 1998,
covered the two properties C Lots 6 and 7.  It
awarded Aldine ISD and the Intervenors (1) a judgment
in personam against the unknown heirs of
Josephine D. Bertram for delinquent property taxes owed for 1992 and (2) a
judgment in rem only for foreclosure of the
tax liens on the two lots against all property owners for taxes owed for 1982
and 1984 B 1991.[2]  The judgment was not appealed.








Thereafter, the clerk of the court issued one order of sale
for both lots and the constable held a tax sale on March 7, 2000.  The constable sold the lots separately.  A third party purchased Lot 6 for more than
the minimum bid, resulting in excess proceeds after the constable distributed monies
in accordance with the Tax Code.  See Tex. Tax Code Ann. ' 34.02 (Vernon Supp. 2000).[3]  No one bid on Lot 7.  Consequently, it was Astruck off@ to Aldine ISD for its minimum bid
amount C the adjudged fair market value C 
resulting in a deficiency owing for judgment amounts due on Lot 7.[4]








The constable remitted $5,946.46 as excess proceeds from the
foreclosure of Lot 6 into the registry of the court.  In the meantime, however, ad valorem taxes, penalties and interest had become due on
both lots for tax years 1998 B 2000.  These monies
remained unpaid at the time of the tax sale. 
Nipper and Nipper-Bertram Trust filed a AMotion to Recover Excess Proceeds of
Tax Sale@ on May 15, 2000, and Aldine ISD and
the Intervenors filed a AJoint Petition to Withdraw Excess
Proceeds@ on July 6, 2000.  On November 3, 2000, the Tax Master ruled the
taxing authorities were entitled to the excess proceeds.  Nipper and Nipper-Bertram Trust appealed that
decision.  See Tex. Tax Code ' 33.74.  The trial court conducted a de novo hearing
and signed an AOrder Disbursing Excess Proceeds From
the Registry of the Court@ on February 2, 2001 (the ADisbursement Order@), awarding the funds to the taxing
authorities.  The trial court entered
findings of fact and conclusions of law on March 23, 2001.  Nipper and Nipper-Bertram Trust timely filed
this appeal.

Issue
Presented

Nipper and Nipper-Bertram Trust present one issue: Did the
trial court err in determining that the excess proceeds from the foreclosure of
the  tax lien on Lot 6 should be
available to satisfy a deficiency and post-judgment taxes, penalties, and
interest owing on Lot 7, on the ground that both properties were made the
subject of the same tax judgment, even though both were treated separately for
tax purposes? 

Standard
of Review

The issue presented requires a review of the trial court=s interpretation and application of
the Texas Tax Code.  Statutory
interpretation presents a question of law subject to de novo review.  Mitchell Energy Corp. v. Ashworth, 943
S.W.2d 436, 437 (Tex. 1997).  A trial
court has no discretion when evaluating a question of law.  See Huie
v. DeShazo, 922 S.W.2d 920, 927 (Tex. 1996); Walker v. Packer,
827 S.W.2d 833, 840 (Tex. 1992). 
Accordingly, we give no particular deference to the trial court=s
findings.  Walker, 827 S.W.2d at
840.  Instead, we conduct an independent
review and evaluate the statute to determine its meaning.  See Lozano v. Lozano, 975 S.W.2d 63,
66 (Tex. App.CHouston [14th Dist.] 1998, pet. denied).

Analysis








Although
the only issue presented is the propriety of the application of excess proceeds
from the tax sale of Lot 6 to satisfy the judgment deficiency remaining on Lot
7, another issue is implicit because Nipper and Nipper-Bertram Trust pray for
the total amount of the excess proceeds. 
Their appellate brief is silent on whether the taxing authorities are
entitled to unsatisfied post-judgment taxes, interest, and penalties owing on
Lot 6 out of the excess proceeds.  We
will address this issue first.

                                        Amounts
that Remained Owing on Lot 6

Nipper
and Nipper-Bertram Trust pray for all of the excess proceeds from the tax sale
of Lot 6.  Yet, the taxing authorities
point out that pre-foreclosure monies remained due and owing on Lot 6 and they
should be awarded those amounts from the excess proceeds.  See Tex.
Tax Code Ann. ' 34.04(c)(1).  We agree
with the taxing authorities.

The
tax sale occurred seventeen
months after the date of the judgment. 
During that time, additional property taxes, interest, and penalties
became due on Lot 6.  At the hearing to
decide the distribution of excess proceeds, Aldine ISD and the Intervenors presented evidence that post-judgment taxes,
penalties, and interest for 1998 B 2000, in the amount of $3,649.82,
were still due and owing on Lot 6. 
Nipper and Nipper-Bertram Trust did not controvert this evidence.

In spite of their claim to the total amount of the
excess proceeds, in their appellate brief, Nipper and Nipper-Bertram Trust do
not challenge the taxing authorities= entitlement to these additional
monies owed on Lot 6.  Under the plain
language of the Tax Code, section 34.04, entitled AClaims for Excess Proceeds,@ such a challenge would be
futile.  That provision reads:

(c)       At the
hearing the court shall order that the proceeds be paid according to the
following priorities to each party that establishes its claim to the proceeds:

(1) to a taxing unit for any taxes, penalties, or
interest that have become due or delinquent on the subject property subsequent
to the date of the judgment;

(2) to any other lienholder,
consensual or otherwise, for the amount due under a lien, in accordance with
the priorities established by applicable law;








(3) to a taxing unit for any unpaid taxes, penalties,
interest, or other amounts adjudged due under the judgment that were not
satisfied from the proceeds from the tax sale; and 

(4) to each owner of the property.

 

Id. ' 34.04.  The priority of payment of excess proceeds to
the taxing authorities under subsection (c)(1) is not ambiguous.  The taxing authorities proved the subject
property, Lot 6, had $3,649.82 due or delinquent subsequent to the
judgment.  Consequently, they are
entitled to collect from the excess proceeds those amounts owed on Lot 6
arising after the judgment until the date of sale.  Accordingly, that part of the Disbursement
Order is affirmed.  Appellees
are entitled to their respective shares of $3,649.82.

                          Post-judgment
Amounts Due and Owing on the Judgment

Nipper and Nipper-Bertram Trust assert the taxing authorities
are not entitled to recover remaining amounts due and owing on the judgment
from the excess proceeds of the foreclosure sale on Lot 6 because those
proceeds can only be used to pay amounts due and owing on Lot 6.  This argument is belied by the plain language
of section 34.04(c)(3), which gives priority to a taxing unit for any Aunpaid taxes, penalties, interest, or
other amounts adjudged due under the judgment that was not satisfied from the
proceeds from the tax sale.@  The taxing
authorities established that they have not been made whole under the judgment,
and thus it seems that they would be entitled to the remaining balance of
excess proceeds ($2,296.64) in this case. 
Yet, Nipper and Nipper-Bertram Trust argue that each lot had a separate
tax identification number and was treated separately for appraisal and assessment
purposes, and the proceeds of one cannot be used to pay the taxes due on the
other.  This, they claim, would result in
a disproportionate assessment on Lot 6. 
Further, they argue that a taxing authority that holds property Astruck off@ to it cannot collect delinquent
amounts owed to it under section 34.01(k) of the Texas Tax Code.  








We begin our analysis with the Tax Code.  It requires that we construe it in accordance
with the Code Construction Act, except as otherwise expressly provided.  Tex.
Tax Code Ann. ' 1.03; see also Tex.
Gov=t Code Ann. '' 311.001‑.032 (Vernon
1988).  Section 311.021 of the Code
Construction Act states:

. . .  In enacting a statute, it is presumed that:

. . .

(3) a just and
reasonable result is intended;

(4) a result
feasible of execution is intended;  and

(5) public
interest is favored over any private interest. 


Id. ' 311.021.

When interpreting statutes, we must give effect to the intent
of the legislature by looking to the plain and common meaning of the statute=s words; if the meaning of the
statutory language is unambiguous, we adopt the interpretation supported by the
plain meaning of the provision=s words and terms.  Fitzgerald
v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex.
1999).  In ascertaining legislative
intent, words and phrases Ashall be read in context and construed according to the rules
of grammar and common usage.@  Tex. Gov=t Code Ann. '311.011.

Section 34.04(c)(3) reads:

(c)       At the
hearing the court shall order that the proceeds be paid according to the
following priorities to each party that establishes its claim to the proceeds:

. . .

(3) to a taxing unit for any unpaid taxes, penalties,
interest, or other amounts adjudged due under the judgment that were not
satisfied from the proceeds from the tax sale . . . .

 

Id. ' 34.04(c).  The phrase Aunpaid taxes, penalties, interest, or
other amounts adjudged due under the judgment@ is modified by the word Aany.@ 
It is not restricted to any monies owed attributable to separate parcels
of property, or separate tax liens; rather, this provision broadly encompasses all
monies owed under the judgment.  








There is but one judgment entered in this case, and the plain
reading of the Tax Code provision requires us to look to it.  The judgment provides for a judgment in personam for the recovery of $5,985.55 and a judgment in
rem for the recovery of $65,795.24.  The record shows that the proceeds of the tax
sales of Lots 6 and 7 did not satisfy these adjudged amounts owed for taxes,
penalties, interest, attorney=s fees, and costs. 
Therefore, there is a priority to their payment before any excess
proceeds are distributed to the owners of the property. 

We find the structure of Section 34.04(c) comports with one
of the overriding goals of the Tax Code, namely to collect revenue.  The Legislature=s decision to adopt a statutory
scheme that sets property owners last in priority to excess proceeds suggests
an intent to provide taxing authorities with an additional avenue for
delinquent tax collection.  The purpose
of a taxing unit is to assess and collect revenues; the provisions of the Tax
Code are a means to that end.  Syntax,
Inc. v. Hall, 899 S.W.2d 189, 192 (Tex. 1995).  The plain language of section 34.04(c)(3)
effectuates this purpose.

Additionally, we find the issue Nipper and Nipper-Bertram
Trust present to be a veiled attack on the very judgment to which they agreed.  The judgment recites, in part: 

IT IS FURTHER ORDERED that the proceeds of any
foreclosure sale of such property made hereunder to any purchaser other than a
taxing unit who is a party to this suit, shall be applied first to the payment
of all costs of making the sale and costs of court and then to the payment of
the judgment and liens foreclosed herein, and the residue, if any, shall be
placed in the registry of the Court in the form of excess proceeds . . . .








Though the tax lien on Lot 6 does not secure the payment of the tax lien
on Lot 7, in this case there is an identity of property owners for the two lots
and Nipper and Nipper-Bertram Trust permitted the taxing authorities to obtain
one judgment covering the two lots. If the judgment involved different owners
or non-adjacent properties, a severance would have been required and use of the
proceeds restricted to each lot respectively. 
But there was no attempt to sever the taxing authorities= claims against Lots 6 and 7; nor
were there two orders of sale or any other segregation of proceeds from the tax
sale of each lot.  

To preserve a complaint about the judgment entered, a party
should note on the record its disagreement with the content and result of the
judgment or some portion thereof.  First
National Bank v. Fojtik, 775 S.W.2d 632, 633
(Tex. 1989) (per curiam).  No objection to the form or content of the
judgment is in the record; Nipper and Nipper-Bertram Trust did not appeal the
judgment or file a motion for new trial. 
In fact, as their counsel acknowledged at oral argument, they
affirmatively agreed to the judgment.  As
a result, Nipper and Nipper-Bertram Trust cannot complain that the proceeds
from the sale of Lot 6 were used to satisfy remaining amounts adjudged due
under the judgment, including the deficiency existing after foreclosure of the
tax lien on Lot 7.  See Litton Indus.
Prod. Inc. v. Gammage, 668 S.W.2d 319, 321B22 (Tex. 1984) (holding a party who
moves for judgment in form entered waives any error in the judgment).  Because Nipper and Nipper-Bertram Trust
agreed to the judgment, we hold they waived their entitlement to have the lots
treated separately under the judgment.

In summary, Nipper and Nipper-Bertram Trust waived any
complaint concerning the use of excess proceeds from the foreclosure of the tax
lien on Lot 6 to pay the deficiency on Lot 7 when they agreed to the
judgment.  Even absent this waiver, they
could not prevail because the language in section 34.04(c)(3) is
unambiguous.  Any excess proceeds in the
registry of the court goes to a taxing unit for Aany unpaid taxes, penalties,
interest, or other amounts adjudged due under the judgment that were not
satisfied from the proceeds from the tax sale.@ 
As a result, the excess proceeds from the tax sale of Lot 6 may be
applied to the amounts due and owing under the judgment for Lot 7.  After a plain reading of section 34.04(c)(3),
the taxing authorities are entitled to the remaining $2,296.64  of proceeds in the registry of the trial
court.  








                                                                Conclusion

Because there remained taxes, penalties, and interest due or
delinquent on Lot 6 after the date of the judgment and before the tax sale as
well as unsatisfied amounts due under the judgment, the taxing authorities are
entitled to all the excess proceeds in the registry of the court.

We overrule the sole issue presented and
affirm the trial court=s Disbursement
Order.

 

 

 

 

/s/        Kem Thompson Frost

Justice

 

 

Judgment rendered and Opinion filed May 9,
2002.

Panel consists of Chief Justice Brister
and Justices Anderson and Frost.

Publish C Tex. R. App. P.
47.3(b).

 











[1]  The Intervenors are Harris County, Harris County Education
Department, Port of Houston of Harris County Authority, Harris County Flood
Control District, Harris County Hospital District, North Harris Montgomery
Community College District, and the City of Houston.





[2]  Oscar Nipper
and the Nipper-Bertram Trust were not held personally liable for any of the
taxes owed.





[3]  ' 34.02 Distribution of Proceeds

a) The proceeds of a tax sale under Section 33.94 or
34.01 shall be applied in the order prescribed by Subsection (b).  The amount included under each subdivision of
Subsection (b) must be fully paid before any of the proceeds may be applied to
the amount included under a subsequent subdivision.

b) The proceeds shall be applied to: 

(1) all costs of advertising the tax sale and all original
court costs payable to the clerk of the court;

(2) all fees and commissions payable to the officer
conducting the sale;

(3) taxes, penalties, and interest that are due under
the judgment; and

(4) any other amount awarded to a taxing unit under
the judgment.

c) If the proceeds are not sufficient to pay the total
amount included under any subdivision of Subsection (b), each participant in
the amount included under that subdivision is entitled to a share of the
proceeds in an amount equal to the proportion its entitlement bears to the
total amount included under that subdivision.

d) If the sale is pursuant to foreclosure of a tax
lien, the officer conducting the sale shall pay any excess proceeds after
payment of all amounts due all participants in the sale as specified by
Subsection (b) to the clerk of the court issuing the order of sale.

e) If the sale is pursuant to seizure of personal
property, the officer conducting the sale shall distribute any excess of
proceeds as provided by law for excess proceeds in the case of execution.

f) In this
section, Ataxes@ includes a charge, fee, or expense that is expressly
authorized by Section 32.06 or 32.065.  Tex. Tax Code Ann. ' 34.02 (Vernon Supp. 2000).





[4]  See id. '
34.01(j) (Vernon Supp. 2000), which reads: 


 

If a bid
sufficient to pay the lesser of the amount calculated under Subsection (b) or
the adjudged value is not received, the taxing unit that requested the order of
sale may terminate the sale.  If the
taxing unit does not terminate the sale, the officer making the sale shall bid
the property off to the taxing unit that requested the order of sale, unless
otherwise agreed by each other taxing unit that is a party to the judgment, for
the aggregate amount of the judgment against the property or for the market
value of the property as specified in the judgment, whichever is less.  The duty of the officer conducting the sale
to bid off the property to a taxing unit under this subsection is
self-executing.  The actual attendance of
a representative of the taxing unit at the sale is not a prerequisite to that
duty.